## NEW YORK OYER AND TERMINER.

DECEMBER, 1845.

Before EDMONDS, Circuit Judge, and two Aldermen.

### THE PEOPLE v. VIRGIL KNAPP.

The weight to be given to dying declarations, even when made in the full consciousness of speedy death.

Their credibility to be subjected to the same tests as any other testimony.

A deposition taken before the coroner before death, though inadmissible as such in evidence, may yet be received as a dying declaration, if the proper foundation be laid for it.

THIS was an indictment for murder, and the question was, whether it was a case of felonious homicide or suicide.

The defendant was a young man, the son of a respectable farmer in Orange county.

The deceased was a young girl of about twenty years of age, the daughter of disreputable parents, who were accused

of keeping a house of ill fame, and she had an elder sister who had an illegitimate child.

The family of the deceased were poor, and though she made it her home at her parents' house, and amid its profligacy, she worked out as occasional help in the families of the neighboring farmers. Among other places at which she thus worked was the family of defendant's father, where she was several months, during which time she and the defendant had illicit intercourse and she became pregnant. Both of them were desirous of concealing the mishap from the neighborhood, and he obtained a situation for her as a servant in a respectable family in New York. She had been there only a few days when one morning she was found by her mistress lying on the kitchen floor in strong convulsions, and in a state of unconsciousness. Physicians were immediately sent for, and they discovered she had been taking oil of tansy, and a vial containing it, and about half full, was found in her room.

Her consciousness was restored about one o'clock that night, and she lingered until the next evening, when she died from the effect of the poison which she had taken. During this time she repeatedly said that the defendant had given her the oil of tansy in order to produce an abortion, and had assured her it would not hurt her; once she testified to this under oath before the coroner, and at other times she declared it to those around her bed when she was fully conscious she could not live.

It was proved for the defense that her general character was bad; that her bad character for chastity had been notorious for several years, and that, when speaking of her sister having an illegitimate child, she had repeatedly said that if she was ever caught so, she would make way with herself, and considered it perfectly right for a young girl to do so.

Often during her last hours she had expressed very hostile feelings toward the prisoner, wishing that he could be made to suffer as she did, and hoping that he would be punished in the next world as she was in this. She made none of the statements about the prisoner having got the poison for her,

in his presence, but once after she had made such a statement when he came into the room she was asked to repeat what she had said about him, and she refused.

Her deposition taken before the coroner was rejected as evidence, except as a dying declaration, preceded by evidence that she knew she was dying.

*J. B. Phillips*, for district attorney.

*D. Graham*, for prisoner.

*The Court* put the case to the jury upon the simple question whether it was homicide by the prisoner or suicide by the deceased.

And, in determining that question, he told them they were to bear in mind that there was not any evidence that the prisoner had had any thing to do with obtaining the oil of tansy, except her statement.

. And though that statement had been made with all the solemnity of a consciousness of approaching death, and therefore entitled to the same weight as her testimony would have been if given personally before them, yet it was not entitled to any more, and was to be weighed and tested as to its credibility by all the other circumstances of the case.

. Among those circumstances, and entitled to great weight, was her previous notoriously bad character; the bitter feelings of revenge toward him which she displayed even in her dying moments; her repeated avowals that she would commit suicide if she should ever become thus pregnant with an illegitimate child; her knowledge at the time that she was thus pregnant; and the testimony of the physicians that the oil of tansy was an acrid poison, calculated to take life, and not a medicine to produce abortion, only as such abortion might flow incidentally from the convulsions which the poison might produce.

The prisoner was acquitted.